**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EDM OFFICE SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3754 |
| | § | |
| HARTFORD LLOYDS INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit to recover insurance proceeds and damages under the Texas Insurance Code and common law. The insurer, Hartford Lloyds Insurance Company ("Hartford") has moved to compel appraisal under an insurance policy issued to EDM Office Services, Inc. ("EDM"). (Docket Entry No. 13). EDM opposes the motion on the grounds that Hartford has not complied with the conditions precedent identified in the insurance policy for appraisal because it has not conducted a reasonable investigation of his claims. Alternatively, EDM argues that Hartford waived its contractual right to seek appraisal. EDM also argues that this court should wait to order appraisal. (Docket Entry No. 19).

Based on a careful consideration of the record and the applicable law, this court finds that this case involves a dispute over the cost of repairing damaged property that is subject to appraisal. This court also finds that EDM did not waive its right to invoke appraisal or fail to comply with the conditions precedent to do so. The motion to compel appraisal is granted. The litigation is stayed pending the appraisal process as to the valuation issues, but will proceed as to the coverage issues.

The reasons for this ruling are set out below.

I.      **Background**

EDM conducts its business operations from a building in Houston, Texas.  Hartford  issued

the insurance policy covering the property.  Hurricane Ike hit the Gulf Coast area in September

2008.  EDM claims that the hurricane damaged the property roof and that water intrusion caused

damage throughout the building, including damages to its ceiling, walls, insulation, flooring, and

inventory.        On September 22, 2008, EDM notified Hartford of the property damage.  Hartford

sent Stephen Scott, an insurance adjuster, to EDM's property.  Scott estimated that the property

damages totaled $8,136.57, though EDM points out that this estimate did not include "overhead &

profit." (Docket Entry No. 19, Ex. C, Scott's First Estimate and Report); (Docket Entry No. 19, at

12).  Scott's report also stated that the damages were likely related to "wind driven rain" and from

water entering the property under doors.  (Docket Entry No. 19, Ex. C, Scott's First Estimate and

Report).  Hartford applied a recoverable depreciation of $1,283.27 and the policy's $50,160.00 and

did not issue payment for the building portion of the claim because it was below the deductible.

EDM has also not been compensated for its business-loss claims.  The parties dispute the

reasons for this.  EDM argues that Hartford denied the business-loss claims because it determined

that the losses were not covered under the policy.  Hartford responds that EDM failed to submit "all

the requested information from Plaintiff in order to adjust the business personal property loss,

including signed Release of Information and/or documentation to support the cost paid by Plaintiff

for the items claimed."  (Docket Entry No. 13, at 4).

EDM filed suit in state court on September 2, 2010, and Hartford removed to this court.  The

state-court petition alleges both coverage and valuation claims.  It alleges that "Hartford wrongfully

denied Plaintiff's claim for repairs of the property, even though the Policy provided coverage for

losses such as those suffered by Plaintiff.  Furthermore, Hartford underpaid some of Plaintiff's claims by not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation." (Docket Entry No. 1, Ex. 2, State-Court Petition, ¶ 20).  The parties attempted to mediate their dispute, but failed to reach an agreement.

On May 25, 2011, Hartford moved to compel appraisal.  The policy's appraisal provision states:

> 1.   **Appraisal**
>
> . . . .
>
> If we and you disagree on the amount of loss (or net income or operating expense as regards Business Income Coverage), either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.  The two appraisers will select an umpire.  If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction.  Each appraiser will state the amount of the loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any of the two will be binding as to the amount of loss. . . .  If there is an appraisal . . . we will still retain our right to deny the claim.

(Docket Entry No. 13, Ex. A).

In his response to the motion to compel, EDM argues that Hartford cannot demand appraisal because it failed to conduct a reasonable investigation of his claims, which EDM asserts is a condition precedent to invoking appraisal.  EDM argues that the following language from the insurance policy obligates Hartford to conduct a reasonable investigation before seeking appraisal:

> **(1)   Claims Handling**
>
> (a)   Within 15 days after we receive written notice of the claim, we will:

3

      (i)      Acknowledge receipt of the claim.  If we do not acknowledge receipt of the claim in writing we will keep a record of the date, method and content of the acknowledgment;

      (ii)     Begin any investigation of the claim; and

      (iii)    Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

      (b)     We will notify you in writing as to whether:

      (i)      The claim or part of the claim will be paid;

      (ii)     The claim or part of the claim has been denied, and inform you of the reasons for denial;

      (iii)    More information is necessary; or

      (iv)    We need additional time to reach a decision.  If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in (b)(i) through (b)(iv) above within:

      (i)      15 business days after we receive the signed, sworn proof of loss and all information we requested; or

      (ii)     30 days after we receive the signed, sworn time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

If we notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

(Docket Entry No. 19, Ex. H).  EDM also argues that Hartford's investigation was not reasonable because it did not comply with sections 542.056 and 541.060 of the Texas Insurance Code.  Section 542.056 states:

4

(a)     Except as provided by Subsection (b) or (d), an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.

(b)     If an insurer has a reasonable basis to believe that a loss resulted from arson, the insurer shall notify the claimant in writing of the acceptance or rejection of the claim not later than the 30th day after the date the insurer receives all items, statements, and forms required by the insurer.

(c)     If the insurer rejects the claim, the notice required by Subsection (a) or (b) must state the reasons for the rejection.

(d)     If the insurer is unable to accept or reject the claim within the period specified by Subsection (a) or (b), the insurer, within that same period, shall notify the claimant of the reasons that the insurer needs additional time. The insurer shall accept or reject the claim not later than the 45th day after the date the insurer notifies a claimant under this subsection.

Tex. Ins. Code § 542.056.  Section 541.060 states:

(a)     It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

. . . .

(2)     failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

(A)     a claim with respect to which the insurer's liability has become reasonably clear;

. . . .

(3)     failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4)     failing within a reasonable time to:

5

> (A)      affirm or deny coverage of a claim to a policyholder; or
>
> (B)      submit a reservation of rights to a policyholder;
>
> . . . .
>
> (7) refusing to pay a claim without conducting a reasonable
> investigation with respect to the claim; . . . .

TEX. INS. CODE § 542.060(a)(2)–(4), (7).  EDM argues that Hartford failed to comply with these

contractual and statutory duties by: "not send[ing] a written acknowledgment of the claim within

15 days of notice"; "unreasonably delay[ing] [denial of] Plaintiff's building damage claim, although

Plaintiff had provided Defendant with all the information and documents requested to evaluate and

settle the claim [and] [misrepresenting] on November 20, 2008 that it had not received the

Adjuster's report even though it was received on October 28, 2008";"fail[ing] to include any amount

for overhead and profit in its estimate of the damages to Plaintiffs' building"; "misrepresent[ing] to

Plaintiffs that BPP claim was covered under the policy when Hartford in fact denied liability for lack

of coverage"; and "unreasonably delay[ing] in denying Plaintiff's BPP claim by sending a denial

letter on August 11, 2009, although Hartford already decided on January 23, 2009 that no coverage

existed." (Docket Entry No. 19, at 20).  Finally, EDM argues that Hartford's delay in paying the

claim waived its right to appraisal because the delay prejudiced him.

## II.    Analysis

Texas insurance policies frequently include provisions specifying appraisal to resolve

disputes about the amount of loss under the policy.  *See State Farm Lloyds v. Johnson*, 290 S.W.3d

886, 888–89 (Tex. 2009).  "An appraisal clause 'binds the parties to have the extent or amount of

the loss determined in a particular way.'"  *Id.* at 895 (quoting *In re Allstate County Mut. Ins. Co.*,

85 S.W.3d 193, 195 (Tex. 2002)); *see also Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."). An appraiser must "decide the 'amount of loss,' not to construe the policy or decide whether the insurer should pay." *Johnson*, 290 S.W.3d at 890. "Unless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

### A.    Conditions Precedent

Assuming, but not deciding, that Hartford failed to comply with the "Claims Handling" provisions of the insurance policy and with provisions of the Texas Insurance Code, this does not prevent it from seeking appraisal because alleged noncompliance with the "Claims Handling" provisions and the Texas Insurance Code does not allege a failure to meet a condition precedent to exercising appraisal rights. "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) (*quoting Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex.1990)). "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Id.* (citing *Criswell*, 792 S.W.2d at 948). "While there is no requirement that such phrases be utilized, their absence is probative of the parties intention that a promise be made, rather than a condition imposed." *Id.* (citing *Criswell*, 792 S.W.2d at 948). The appraisal clause does not use conditional language and EDM has not identified any provision in the contract showing that the parties intended

that Hartford fully comply with the "Claims Handling" provisions and Texas Insurance Code before seeking appraisal. *See also Butler v. Prop. and Cas. Ins. Co.*, Civ. A. No. H-10-3613, 2011 WL 217495, at *1 (S.D. Tex. June 3, 2011) (finding that a similar insurance-policy appraisal provision does not require compliance with claims handling provision before seeking appraisal). Compliance with the "Claims Handling" provisions and the Texas Insurance Code is not a condition precedent to compelling appraisal.

### B.      Waiver

The contractual right to appraisal may be waived. *See, e.g.*, *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 561 (Tex. App. — Houston [14th Dist.] 2010, orig. proceeding). Waiver is defined as the "intentional relinquishment of a known right." *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (summary calendar) (unpublished). Courts applying Texas law follow the standard articulated long ago in *Scottish Union & Nat. Ins. Co. v. Clancey*, 8 S.W. 630, 632 (Tex. 1888), to determine whether an insurer's acts amount to waiver: "To constitute waiver, the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss."[1] *See, e.g.*, *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-CV-0228-G, 2010 WL 1186323, at *4 (N.D. Tex. Mar. 26, 2010); *In re Sec. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op.,

---

[1]   Other cases quote similar language from *Scottish Union & Nat. Ins. Co. v. Clancey*, 18 S.W. 439, 441 (Tex. 1892): "[T]he acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him." *See, e.g.*, *JM Walker LLC*, 356 F. App'x at 748; *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010).

not designated for publication); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 563.

"[W]hile an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse." *In re Universal Underwriters of Tex. Ins. Co.*, --- S.W.3d ----, 2011 WL 1713278, at *3 (Tex. May 6, 2011). Determining whether the parties have reached an impasse "requires an examination of the circumstances and the parties' conduct, not merely a measure of the amount of time involved in seeking appraisal." *Id.* "An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations . . . do not trigger a party's obligation to demand appraisal. Nor does an insurer's offer of money to cover damages necessarily indicate a refusal to negotiate further . . . ." *Id.* "[M]ere delay is not enough to find waiver; a party must show that it has been prejudiced." *Id.* at *5. "Prejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position." *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5. The Texas Supreme Court has observed that "it is difficult to see how prejudice could ever be shown when the policy . . . gives both sides the same opportunity to demand appraisal. If a party senses that an impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *Id.* at *7.

Waiver is an affirmative defense, and the party alleging waiver has the burden of proof. *JM Walker LLC*, 356 F. App'x at 748; *Sanchez*, 2010 WL 413687, at *4. Whether certain circumstances constitute waiver is a question of law. *JM Walker LLC*, 356 F. App'x at 748; *see also Sanchez*, 2010 WL 413687, at *4 (holding that although waiver is typically a fact question, when the relevant facts are undisputed and clearly established, a court may decide whether a party has waived its contractual right to appraisal as a question of law). "The trial court may determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation." *Sanchez*, 2010 WL 413687, at *4 (quoting *Laas v. State Farm Mut. Auto. Ins. Co.*, No. 14-98-00488-CV, 2000 WL 1125287 at

*6 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (unpublished)).

The parties have reached an impasse.  They could not successfully mediate their claims.
EDM argues that Hartford delayed seeking appraisal.  EDM, however, has not demonstrated
prejudice.  *See Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5 ("[M]ere delay
is not enough to find waiver; a party must show that it has been prejudiced.").

The Texas Supreme Court has explained that:

> [to] constitute waiver the acts relied on must be such as are
> reasonably calculated to induce the assured to believe that
> compliance by him with the terms of the policy . . . is not desired, or
> would be of no effect if performed.  The acts relied on must amount
> to a denial of liability or refusal to pay the loss.

*Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *2 (quoting *Scottish Union*, 8 S.W.
at 632).  "Or," as the court "more recently concluded, '[w]aiver requires intent, either the intentional
relinquishment of known right or intentional conduct inconsistent with claiming that right.'"  *Id.*
(quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006).  The court has also
explained that prejudice can rarely be found on facts similar to those present here. *Id.* at *5; *see also*
*Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008) (defining prejudice for purposes of waiver
of arbitration as "the inherent unfairness in terms of delay, expense, or damage to a party's legal
position" (quoted in *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5 )); *In re Tyco*
*Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 47 n.5 (1st Cir. 2005) ("[A] party should not be allowed
purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an
unfair tactical advantage over the opposing party." (quoted in *Universal Underwriters*, --- S.W.3d
----, 2011 WL 1713278, at *5); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 222
(1st Cir. 1995) (finding prejudice where party "incurred expenses as a direct result of [opponent's]
dilatory behavior" (cited and quoted in *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278,

at *5 )).  EDM has not shown prejudice.[2]

### C.    Whether to Stay the Litigation Pending Appraisal

EDM argues that this court should allow it additional discovery pending appraisal on its claims that Hartford violated the Texas Insurance Code and on its coverage claims.  "While [a] trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal."  *In re Allstate*, 85 S.W.3d at 967.  In many cases, the litigation is stayed while appraisal is completed.  *See, e.g.*, *Molzan, Inc. v. United Fire & Cas. Co.*, Civ. A. No. H-09-01045, 2009 WL 2215092, at *5 (S.D. Tex. July 23, 2009); *cf. Johnson*, 290 S.W.3d at 895 ("Unless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts."); *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *2 ("Appraisals can provide a less expensive, more efficient alternative to litigation . . . .").  But courts have held that when a dispute involves both coverage and valuation disputes, a court should stay the valuation portion of the case and proceed with the coverage portion.  *See Glenbrook Patiohome Owners Ass'n v. Lexington Ins. Co.*, 2011 WL 666517, at *10 (S.D. Tex. Feb. 14, 2011) ("In this case, however, the record makes clear that there are issues of both coverage and of loss valuation. Under such circumstances, the part of the litigation that involves loss valuation is appropriately stayed.  The part of the litigation that involves coverage issues, however, should continue pending the appraisal.").  In this case, the record makes clear that there are issues of both coverage and of

---

[2]  EDM argues that Hartford's delay prejudiced it because "any appraisal award at this juncture would be outside of the policy deadline for making a claim for replacement cost."  (Docket Entry No. 19, at 24).  EDM points to a provision in his insurance policy stating that an insured who elects, as EDM did, to make a claim on an actual-cash-value basis has 180 days to change the claim to a replacement-cost basis.  EDM argues that Hartford's motion to compel appraisal prevents it from exercising this right.  EDM has identified no provision in the insurance policy stating that an appraisal prevents it from making its claim on a replacement-cost basis, or that it cannot ask for a replacement-cost basis at appraisal.  This is not prejudice.

loss valuation.  Under such circumstances, the part of the litigation that involves loss valuation is appropriately stayed.  The part of the litigation that involves coverage issues, however, should continue pending the appraisal.

**III.    Conclusion**

Hartford's motion to compel appraisal, (Docket Entry No. 13), is granted.  During the appraisal, this case will proceed on coverage issues; the litigation on the loss valuation issues is stayed.[3]  The parties must notify this court when the appraisal is concluded and the result within 14 days after the appraisers issue their report.

SIGNED on July 1, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[3]  In light of this court's ruling, Hartford's motion for protection, (Docket Entry No. 14), is denied as moot.  EDM's motion for leave to file excess pages, (Docket Entry No. 18), is also denied as moot.